| United States District Court | Southern District of Texas |
|---|---|

| | |
|---|---|
| Lawrence Higgins,<br>TDCJ 1060189,<br>　　　　　Plaintiff,<br><br>versus<br><br>Richard Morris, ET AL.,<br>　　　　　Defendants. | §<br>§<br>§<br>§<br>§　　Civil Action H-13-2419<br>§<br>§<br>§ |

# Opinion on Dismissal

　　Lawrence Higgins sues Texas prison officials Warden Richard Morris, Major Ernest Navarrete, and Captain Deleta Jones for civil rights violations. Higgins raises retaliation claims. The defendants move for summary judgment.

1. *Claim*

　　In February of 2013, a prison officer ordered Higgins to give a urine sample. The sample tested positive for marijuana. He was found guilty of marijuana possession in a prison disciplinary hearing. A classification committee changed his housing and custody from level G-2 to G-4. The committee also moved him from general population to medium custody. When a guard took the first urine sample, Major Navarrete, who was responsible for approving the urine test, failed to sign the papers for the test. Higgins filed a grievance on the marijuana test. Prison officials overturned the disciplinary case because Major Navarrete had not signed the test papers.

　　A disciplinary officer reheard the disciplinary case three months later. Higgins was found guilty again. Prison officials gave him the same punishment he received in the first disciplinary hearing. Major Navarrete headed the committee rehearing the custody determination. In the second classification hearing, Major Navarrete asked Betty Germany what the committee usually does with a case like Higgins's. She replied "G-4 medium custody." Captain Jones, the third committee member, agreed that G-4 medium custody was the typical result. Major Navarrete said: "I remember this case now, this is the one where [Higgins] filed a grievance and the case was overturned because I forgot to sign the paperwork .... I guess we are going to leave you as you were originally put for the case on G-4 medium custody, but let the record show that I would have rather put you in closed custody for all this trouble." Captain Jones responded to Major Navarrete's statement by stating: "Oh, wait a minute, I want to change my vote to G-5 closed custody." G-5 custody is less desirable

than G-4. Higgins objected. Major Navarrete said "you're the one who filed a grievance," and Captain Jones added "file another grievance."

Officials initially put Higgins in medium custody. In the second classification meeting, the committee treated him harsher than in the first meeting. The committee reclassified Higgins to G-5 level and closed custody. On rehearing three months later, with no new cases against him, the classification committee put Higgins in closed custody for the same disciplinary case. Prison officials downgraded his classification more severely than they had after the first disciplinary case.

Higgins contends Major Navarrete struck back against him for bringing attention to the error in the urine test. He maintains that Navarrete, the person responsible for the disciplinary conviction being overturned, retaliated against him by placing him in G-5 custody. Higgins claims Captain Jones conspired with Navarrete and retaliated against him for using the grievance procedure to increase the punishment in the second classification hearing.

2. *Retaliation*

Prison officials may not retaliate against an inmate because he exercised a First Amendment right. *Woods v. Higgins*, 60 F.3d 1161, 1164 (5th Cir.1995). To prevail on a retaliation claim, a prisoner must show (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Under the causation element, a plaintiff must show that but for a retaliatory motive, the event underlying the claim would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

3. *Causation*

The defendants contend that under the causation element Higgins must show prison officials would not have demoted him to G-5 custody except for retaliation. They maintain Higgins cannot show causation. The defendants submit evidence showing retaliation was not the reason prison officials moved Higgins to G-5 housing.

Under prison rules, the classification committee must be diverse. (16, Ex. A, p.26). The members should not all be guards. *Id.* The first committee consisted of Michael Barnett, Colby Oldham, and Betty Germany. On rehearing, the committee included Navarrete, Deleta Jones, and Germany. (Ex. A at 2; Ex. H at 2). In the first committee decision, two members voted for G-4 custody status, and the other member voted against that custody level. *Id.*

After the second classification hearing, the panel vote consisted of two votes for G-5 status and one vote against G-5. As the defendants observe, the different vote results are because two different groups of people were making a subjective decision. The defendants maintain Higgins does not raise a genuine issue overcoming the fact that different groups of people may act differently. That is why the two panels gave Higgins different custody classifications in the two custody decisions. The different custody classification the second time was the result of the votes of the three members of the classification committee. Higgins fails to raise facts showing his second custody classification was the result of retaliation by Navarrete. He did not have the authority to unilaterally impose G-5 custody status on Higgins.

Warden Morris was the prison official who said Higgins was the one who "filed a grievance and had the case overturned, too bad ...." Under Higgins's pleadings, Navarrete did not act professionally and he admitted he would have liked to put Higgins in G-5 custody. The determination to impose G-5 custody status on Higgins, however, was the result of a vote by Navarrete and two other classification panel members.

Higgins does not show causation. Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *McDonald V. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Navarrete's single vote did not cause Higgins's demotion to G-5 custody status. The custody demotion required at least one other vote besides Navarrete's vote. The demotion would not have occurred without at least one other member of the classification committee voting for the demotion. Higgins fails to show that, absent a retaliatory motive by Navarrete, the custody demotion would not have occurred.

5. *Conclusion*

Higgins does not show that absent a retaliatory motive he would have been given a more favorable custody level. He fails to raise facts material to his retaliation claim. The defendants' motion for summary judgment (16) is granted.

Signed May 21, 2015, at Houston, Texas.

Lynn N. Hughes
United States District Judge